## DONALDSON et al., Appellants, v. ALLEN et al., Appellants.

### Division One, June 20, 1904.

1. **WILL: Creation of Trust: Power of Disposal: When Official.** If the will expressly and absolutely directs the executor to sell real estate, without vesting any discretion in him, and to distribute the proceeds, the power adheres to the office of executor and is not personal, and must be exercised during the continuance of the executorship, for in such case the proceeds of the sale of the real estate become personal assets, and are a proper subject of administration and distribution by the probate court.

2. ————: ————: ————: **When Personal.** If the will confers a power of sale, together with a discretion to sell or not to sell, as the donee of the power sees fit, the trust is personal, and is independent of the official character of the donee as executor, and may be exercised by the donee even if he does not qualify as executor, and survives the final administration of the estate, and continues until the purposes of the trust have been accomplished or until the donee of the power has had a reasonable time in which to execute the trust, at which time a court of equity has power to terminate the trust and distribute the estate.

Donaldson v. Allen.

3. ——: ——: ——: ——: **Perpetual: Termination.** A testator, after disposing of the great bulk of his estate either absolutely or for life, and by the residuum clause giving his personal property to his children absolutely, in the same clause provided: "And as to any real estate, wherever situate, other than that above disposed of, I give and bequeath the same to my executors, hereinafter named, in trust, to be by them held, improved, leased, sold, or otherwise disposed of as to them may seem best for the use and benefit of my own children above named in equal shares, with the following exceptions," which was that his ancestorial home, which he had previously given to his wife for life, should be sold to the child who would give the most for it. *Held*, that, as the will vested the donees of the power with a discretion, the power was personal, and not official, and survived the final settlement of the estate by the executors. But the power was not perpetual, and the donees are subject to the control of a court of equity.

4. ——: ——; **Discharge: Unproductive Real Estate: Partition.** The real estate that fell into the trust estate was in part productive and part unimproved lands in another State, and the evident purpose of coupling the two together was to provide means of supplying the necessary carrying charges for the unproductive property, and the evidence shows that that property has increased in value in twenty years only fifty cents an acre, or from $7,500 to $9,000, and that the entire trust estate yields $4,000 annually and the necessary carrying charges are $2,000. *Held*, that the trust should be discharged, and the partition of the estate ordered.

5. ——: **Trust Estate: Discharge: Receivers.** Where the chancellor properly discharges the trust, there is no necessity for the renewal of the testamentary trustees and the appointment of a receiver to take charge of the estate if those trustees have theretofore properly administered the trust. But as that involves only the question of fees, the court's action in that regard will not be held to be the exercise of an unwise discretion, if it is justifiable by the circumstances of the case.

6. ——: ——: ——: **Lands Outside of The State.** Where the trust estate consists in part of lands outside this State, the trust being discharged and the testamentary donees personally in court, it is competent and proper for the court to require them to convey to the beneficiaries the trust property which was without the territorial jurisdiction of the court.

7. ——: ——: **Care of Trustees: Employment of Agents.** A trustee is only required to exercise such care in managing the trust property as an ordinarily prudent man would exercise in

the management of his own property. As such men usually employ agents to attend to ministerial duties, such as to collection of rents, so trustees have the right to employ agents for the same purpose, and if they exercise ordinary care in the selection of such agents they are not liable for their defalcations.

8. ———: ———: ———: ———: **Defalcation.** The agent of the trustees had been employed by the testator in his lifetime, and by all the beneficiaries of the trust estate to perform like services for them, and his defalcations from them at the end of eighteen years had been over $100,000, but from the trustees $3,758.33. *Held*, that this defalcation should not be charged to the trustees.

9. **ADMINISTRATION: Error In Accounts: Charge to Executors.** The fees justly allowed executors in the administration of a very large estate amounted to about $109,000 and on final settlement the estate owed them over $20,000, and in an effort by the legatees to surcharge and falsify their accounts, it appeared that they had innocently omitted to charge themselves with $1,000 with interest. *Held*, that as the estate suffered no loss by reason of this omission, but still owes them about $19,000, it would be improper to compel the executors to account for that omitted item.

10. **DISCHARGING TRUST: Fees To Trustees.** It is proper, on the discharge of a trust, to allow the testamentary trustees, who were also the executors of the will, five per cent fees as commissions on funds distributed by them to the beneficiaries since the final settlement of the estate.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

*Judson & Green, Donaldson & Donaldson, Albert Arnstein* and *Henry Wollman* for plaintiff-appellants.

(1)    The devise to the executors of the real estate, subject to the life estate, was not to them personally, but to them as executors. The estate in trust was, therefore, annexed to the office of executor, and terminated therewith.    Littleton v. Addington, 59 Mo. 275; Francisco v. Winfield, 161 Mo. 542; Garesche v. Ins. Co., 146 Mo. 436.

(2) While the learned judge was correct in holding that the devise in trust was incidental to the main purposes of the will, it is not necessary for the purposes of this case that the devise in trust should be held to have been definitely limited by the will. If this trust could be construed as a personal trust, apart from this executorship, surviving in the sons after the death of the widow, the right of plaintiffs to a decree is equally clear. It is fundamental in the law of trusts that when the purposes of a trust are fulfilled, it will be discharged by the court on the demand of a beneficiary, and that a trust continue no longer than its purposes require. Pitts v. Sheriff, 108 Mo. 116; 1 Lewin on Trusts (1 Am. and 8 Eng. Ed.), p. 213; Young v. Bradley, 101 U. S. 782; 3 Jarman on Wills (5 Ed.), pp. 72 and 85; Inches v. Hill, 106 Mass. 578; Seamans v. Gibbs, 132 Mass. 241; Bowditch v. Andrews, 8 Allen 339; Sears v. Choate, 146 Mass. 395; Perry on Trusts (4 Ed.), sec. 320; Webster v. Cooper, 14 How. 489; Goyd v. Allen, 24 Ch. D. 622. (3) Under the facts in evidence it is clear that the purposes of the devise in trust have been fulfilled. Seamans v. Gibbs, 132 Mass. 241; In re Cooper's Estate, 150 Pa. 584; In re Muldroon's Heirs v. Fox's Heirs, 2 Dana (Ky.) 74; In re Weston's Estate, 91 N. Y. 502; Boyd v. Allen, 24 Ch. D. 622; In re Lockhardt, 4 Brad. 21. In this case no reason was urged for the continuance of the present protectorate over the property which might not be urged twenty years hence, or any time in the indefinite future, during the lifetime of the defendants or until the property is exhausted. Garesche v. Inv. Co., 146 Mo. 449. (4) As the court properly decreed the termination of the trust, it necessarily followed that plaintiffs were entitled to a partition of the real estate located within the jurisdiction of the court, that is, in the State of Missouri. Holloway v. Holloway, 97 Mo. 628. The limitations attending proceedings in partition are constantly weakening and the tendency to do full justice to the parties in the one action is becoming irresistible.

Freeman on Cotenancy and Partition, sec. 650. It is well settled that a court of equity will entertain a bill to partition an equitable estate wherein the legal title is held by the defendant and the equitable title is in plaintiffs, even though the defendant trustee is in possession. The court having acquired jurisdiction of the case, may determine the whole controversy. James v. Groff, 157 Mo. 402. (5) There is no merit in the contention that the partition was ordered in contravention of the statute, section 4383, Revised Statutes 1899, as the partition ordered is not in violation of the intention of the will, but in accord with the purpose of the said will that all the property of the testator, real as well as personal, should be vested in his children, and the devise to the executors in trust was only in furtherance of that purpose. (6) As to the real estate located in other jurisdictions, it was clearly proper for the court, having decreed the termination of the estate of the trustees, to make its decree effective as far as its jurisdiction over the persons of the trustees permitted. The decree would have been obviously incomplete without such direction for the conveyance of undivided interests in the property of the trust located in other jurisdictions. The decree was entered in the court which had jurisdiction over the trust, as well as over the persons of the trustees. 1 Perry on Trusts (4 Ed.), secs. 71 and 72. (7) The trustees should have been held chargeable with the sum of $3,-758.33, the defalcation of James W. Wallace. A trustee will be held responsible for losses to the trust fund occasioned by the negligent or criminal acts of an agent employed by him in the management or care of the trust property. 1 Perry on Trusts, sec. 441; Trutch v. Lamprell, 20 Beav. 116; Corwell v. Gatacome, 27 Beav. 568; Hapgood v. Parkin, L. R. 11 Eq. 74; Bostock v. Floyer, L. R. 1 Eq. 26; Fry v. Tapson, L. R. 28 Ch. D. 268; In re Litchfield, 10 Atk. 87. (8) The court should have held that the trustees did not exercise due care in supervising the acts of their agent employed in the affairs of

the trust.   A trustee is required to use the same care in the management of the trust estate that a careful and diligent man employs in the management of his own property:   1 Perry on Trusts, sec. 441; Fry v. Tapson, L. R. 28 Ch. D. 268; Finley v. Schlueter, 54 Mo. App. 458; Taylor v. Hite, 61 Mo. 142.   To exonerate trustees from liability for losses to the trust fund occasioned by the act of an agent employed by them, there must be shown a necessity for the employment of the agent, that the trustees used due care and diligence in his selection and appointment, in looking after his actions as agent and in seeing that he rendered true accounts of the money of the trust in his hands.   McCloskey v. Gleason, 56 Vt. 264; Bostock v. Floyer, L. R. 1 Eq. 26; Turner v. Corney, 5 Beav. 515; McRoberts v. Carneal, 44 S. W. 442.   (9)   The court should not have allowed the sum of $1,066, nor any sum, as compensation to the trustees for their services since 1898.   Trustees guilty of a breach of trust or of gross negligence from which a loss to the trust estate results, are not entitled to compensation. Maginn v. Green, 67 Mo. App. 616; State v. Berning, 74 Mo. 87; Lathrop v. Baubie, 106 Mo. 470; State v. Richardson, 29 Mo. App. 603.   The compensation of trustees should depend on their fidelity in the administration of the trust and should not exceed the value of their services to the estate.   2 Perry on Trusts, sec. 919; Carriers' Appeal, 79 Pa. St. 230; Perkin's Appeal, 108 Pa. St. 314.

*Hamilton Grover* and *Henry W. Allen* for defendant-appellants.

(1)   The powers conferred upon the trustees under the will are personal and discretionary in their character and are not attached to the office of executor.   The trust continued, although the estate was finally settled and the executors discharged.   Woerner, Law of Adm. (1 Ed.), p. 721; Hazel v. Hagan, 47 Mo. 277; Beach on

Trustees, art. 442; Owen v. Switzer, 51 Mo. 328; In re Rickenbaugh, 42 Mo. App. 328; Simpson v. Cook, 24 Minn. 180, 27 Minn. 147; Parson v. Lyman, 5 Blatch. 170; Anderson v. Earle, 9 S. C. 460; State ex rel. v. Boon, 44 Mo. 254; Williams v. Cushing, 34 Me. 370; In re Higgins Est., 15 Mont. 474; Daggett v. White, 128 Mass. 390; Fielding v. Rose, 61 Mo. App. 189; Compton v. McMahan, 19 Mo. App. 494; Tainter v. Clark, 13 Met. 220; In re Est. of Besley, 18 Wis. 451; Bennett v. Chapin, 77 Mich. 526; Collier v. Egerton, 21 Wend. 430; Ingle v. Jones, 9 Wall. 486; Hayes v. Pratt, 147 U. S. 567.    (2)    The trustees have been and are now engaged in the honest and conscientious exercise of the discretion conferred upon them by the will.    They have been selling the property, from time to time, as opportunity offered, and distributing the proceeds.    All the property left unsold has appreciated in value.    When they can get what they consider a fair price for what is left, they will sell that.    Until the balance of the property can be sold at what, in the judgment of the trustees, is a fair price, the purpose of Thomas Allen in the creation of the trust is not fully performed.    (3)    When a testator provides that certain acts shall be performed by trustees appointed in his will, but leaves the time and method of performing those acts to the discretion of the trustees, and they are honestly and conscientiously engaged in the exercise of that discretion, without the slightest suspicion of fraud or unfair dealing, a court of equity will not be justified in interfering with the management of the trust property at the suit of a minority of the beneficiaries who disagree with the trustees upon a question of judgment.    It is the judgment of the trustees upon which the testator relied and not that of the beneficiaries, nor that of the court, and the doctrine holds good even though the court should differ with the trustees on the question of judgment, and especially is it true when it appears that the discretion of the trustees is being wisely exercised.    27 Am. and Eng. Ency. Law

(1 Ed.), 140; Perry on Trusts (5 Ed.), sec. 510; In re Naglee's Est., 52 Pa. St. 159; Veazie v. Forsaith, 76 Me. 172; In re Jas. Marshall, 138 Pa. St. 260; Muldrow's Heirs v. Fox's Heirs, 2 Dana (Ky.) 74; Ames v. Scudder, 11 Mo. App. 192; Haydel v. Hurck, 5 Mo. App. 267; Stevens v. De La Vaulx, 166 Mo. 20; Smith v. Wildman, 37 Conn. 384; Bank v. Sutton, 147 Mass. 131; Bacon v. Bacon, 55 Vt. 252; Gerard v. Buckley, 137 Mass. 475; Hutchinson's Appeal, 82 Pa. St. 509. (4) The partition of lands contrary to the intention of the testator is prohibited in Missouri by express statutory enactment. R. S. 1899, sec. 4383. (5) The appointment of a receiver to take charge of the property of the trust estate, especially the lands out of the State of Missouri, was totally uncalled for, was not justified by any facts or circumstances requiring it, and was an abuse of the discretion of the lower court. Miller Bros. v. Perkins, 154 Mo. 637; Overton v. Railroad, 10 Fed. 866; Morris v. Buckner, Fed. Cases, No. 9844; Baker v. Backus, Adm., 32 Ill. 79; Speights v. Peters, 9 Gill. (Md.) 472; Oil & Min. Co. v. Petroleum Co., 57 Pa. St. 83; Harrup v. Winslet, 37 Ga. 655; Malady v. Malady, 26 La. Ann. 438; Bathman v. Bathman, 79 Hun 477; Bank v. Field, 156 Mo. 306; Stark v. Grimes, 88 Mo. App. 409. (6) The only loss suffered by the trust estate is the defalcation of James W. Wallace, agent for the collection of rents. In that matter there is neither charge nor proof of gross negligence. The trustees having acted with ordinary prudence, are not responsible for Wallace's defalcations. (a) A trustee is not the insurer of the integrity of the trust fund. He is only bound to employ such diligence and such prudence in the care and management of the fund as in general prudent men of discretion and intelligence in such matters employ in their own like affairs. Neff's Appeal, 57 Pa. St. 91; Taylor v. Hite, 61 Mo. 142; Miller v. Proctor, 20 Ohio St. 442; King v. King, 37 Ga. 220; Campbell v. Campbell, 38 Ga. 304; Carpenter v. Carpenter, 12 R. I. 544; 2 Story, Eq. Juris., sec. 1269;

Woodruf v. Snedecor, 68 Ala. 437; Davis v. Harmon, 21 Grat. 194; Knight v. Earl of Plymouth, 1 Dick. 124; Bates v. Hamilton, 144 Mo. 1. (b) A trustee has the right to appoint agents to execute the ministerial duties of the trust whenever such appointment is necessary or is according to the common usage of business. Anderson v. Roberts, 147 Mo. 487; Lewis v. Reed, 11 Ind. 239; Underhill on Trusts and Trustees (Am. Ed.), p. 293, note. (7) The trustees should not be held personally liable for the sum of $1,400, being the proceeds of the sale of real estate sold during the period of administration on the estate and not accounted for in their settlement in the probate court, it appearing that upon final settlement the estate was indebted to them in the sum of $20,556.14, which is still due and unpaid. (8) Trustees who have faithfully performed their duties are entitled to compensation for services rendered, and a commission of five per cent on disbursements is a reasonable compensation. Maginn v. Green, 67 Mo. App. 616; Kemp v. Foster, 22 Mo. App. 643; State to. use v. Richardson, 29 Mo. App. 595; Underhill on Trusts and Trustees (Am. Ed.), p. 317, note; R. S. 1899, sec. 223.

MARSHALL, J.—This is a proceeding in equity to construe the will of Thomas Allen, deceased, to have the trust created by the will terminated and dissolved, to require the trustees to account, and to have the real estate covered by the trust partitioned.

The facts, which are practically conceded, are these:

Thomas Allen was a prominent citizen of St. Louis, was a lawyer, the president of a railroad, a man of large fortune and had been a member of Congress. He died testate, in 1882, leaving his widow and seven children, to-wit, the plaintiffs, Elizabeth L. Donaldson and Alice Maud Allen, since intermarried with Louis Lombard, and the defendants, William Russell Allen, Thomas Allen, George W. Allen, Annie L. Allen, since intermarried with Louis Chauvenet, and Bradford Allen,

who has since died, leaving a widow, Helene G. Allen, and a daughter Annie, now intermarried with Pietro Lante de la Rovere.

By the terms of his will the testator gave his widow his homestead in Pittsfield, Massachusetts, and likewise his homestead in St. Louis, for life. He also gave her absolutely the household furniture, carriages, horses and other personal property at both places. He further gave her for life, a lot on Main street, between Market and Chestnut streets in St. Louis; he also gave her for life, whatever ground he owned on the east side of Carondelet avenue, near the arsenal, in St. Louis, and his farm of two hundred and seventy-two acres near Pittsfield, Massachusetts; also certain books, pictures, etc., absolutely. He also gave her absolutely one hundred thousand dollars in cash, and one hundred thousand dollars in the five per cent consolidated bonds of the St. Louis & Iron Mountain Railroad Company. He also gave her absolutely all the real estate conveyed to him by Joseph J. Clark, lying in the city of St. Louis and in the county of Jefferson.

He authorized his executrix and his executors to divide the property known as the Southern Hotel, by forming it into a corporation composed of his seven children, and dividing the stock equally among them. He gave certain specific legacies and forgave certain debts due him. The will then provided as follows:

"The residue of my estate, real and personal, which I may own at the time of my decease, it is my will shall be disposed of and bestowed as follows: The several stocks and bonds which may be held by me in corporations and all other of my notes, bonds and mortgages (excepting notes given me for accruing rents), and money, I desire may be divided into seven equal parts, or shares, and given in kind as far as practicable to each of my seven children, viz.: Elizabeth L. Donaldson, William R. Allen, Thomas Allen, Jr., George W. Allen, Bradford Allen, Annie L. Allen, and Alice Maud

Allen, in equal parts as far as may be, excepting the shares of stock which I may hold in the St. Louis Globe-Democrat Job Printing Company, which I give and bequeath to my son Bradford Allen, in addition to the share above mentioned. I desire and direct also that my executors shall take fifteen of my second mortgage bonds of the St. Louis & Iron Mountain Railroad Company of one thousand dollars each and set apart and hold the same for the use and benefit of my daughter, Alice Maud Allen, paying over to her or to her use the semiannual interest thereon until she arrive at the age of twenty-one years, at which time I desire that said fifteen bonds be given her absolutely, and this in addition to the share above mentioned. *And as to any real estate wherever situate, other than that above disposed of, I give and bequeath the same to my executors hereinafter named, in trust, to be held, improved, leased, sold, or otherwise disposed of as to them may seem best for the use and benefit of my own children above-named in equal shares, with the following exceptions*: Desiring that my homestead in Pittsfield, which has been as to the major part in my family for over one hundred years, should continue to be held and occupied by one or more of my descendants as long as may be, it is my will that, after the decease of my wife, if she survives me, the same homestead shall be sold and conveyed to whichever of my children shall be willing to give the most therefor, the sum to be paid to be divided equally among my children, the purchaser or purchasers deducting his or hers or their shares therefrom.''

He then appointed his wife, Ann R. Allen, and his sons, William R. Allen and George W. Allen, the executrix and executors of his will, without bond.

The will was admitted to probate in 1882, and the executrix and executors entered upon their duties. The exact value of the estate is not disclosed by the record, although it does appear that the trust property is only a small part thereof, and is of the value of $100,000 to

$130,000, consisting of some land in St. Louis and in Illinois, and about six thousand acres of unimproved land in Arkansas, which was worth about two dollars and a half an acre at the time of his death, and about three dollars an acre at the time of the trial, and yielded a revenue of about $4,000 a year, and that the carrying charges of the trust were about $2,000 a year. The widow died in January, 1897, and the two sons continued to administer upon the estate and finally settled it in April, 1898. The magnitude of the estate may be conceived from the fact that the commissions allowed the executors amounted to $109,846.64, and the prompt and efficient manner in which the executors performed their duties and made distribution of the estate is shown by the fact that upon settlement there was not enough cash remaining in the hands of the executors to pay their said commissions in full, but there remained due them on that account from the estate the sum of $20,556.14, which has never been paid. After Mrs. Allen's death the sons continued to act as trustees of the real estate under the clause of the will above set out, from April, 1898, until December 23, 1901, when this suit was instituted. During that time there was not very much done except to collect the rents, pay the taxes, occasionally sell some of the unimproved land as opportunity presented itself, and distribute the net profits among the several devisees, and this they did. William Russell Allen attended principally to the business, as he had done during the continuance of the executorship, although he consulted his co-executor and cotrustee, George W. Allen. William Russell Allen divided his time nearly equally between St. Louis and Pittsfield. After the termination of the executorship, just as they had done during its continuance, Mr. Allen employed one J. W. Wallace, as agent, to collect such rents and to deposit them to his, Allen's, credit as such trustee. The only books that were kept by the trustees were, first, a plat book which the testator

had used for the same purpose, which showed the various parcels of land. When any part was sold a memorandum thereof was made on the face of the plat book. Second, a deposit book, which showed the amount deposited in the bank, and a receipt book, the stub of which showed the amount received, from whom and for what purpose. Wallace attended to this part of the business. On the twentieth of January, 1900, Wallace absconded, and it was then ascertained that he was short in his accounts $3,758.33. It also appeared that for some time prior thereto Mr. Allen had not checked up Wallace's accounts, nor compared his receipts with his deposits, and that Wallace had withheld the said amount from his receipts and had not deposited it. The plaintiffs claim that the trustees had no power to delegate their duties and that they are responsible for the loss arising from the defalcation of their employee, or at any rate they were careless and negligent in not checking up their agent's accounts and hence are liable. On the other hand the defendants show that Wallace had been auditor of the St. Louis & Iron Mountain Railroad Company during the time their father was its president and until the consolidation of that road with the Missouri Pacific Railroad, and was the trusted friend of their father and of the whole family, the plaintiffs included; that his employment by the defendants first in their capacity of executors and then as trustees was known to the plaintiffs and acquiesced in by them; that so great was the confidence of all the family in Wallace that after their father's death, he was selected as a trustee of the Russell Institute, by the other plaintiff, W. R. Donaldson, and the defendant William Russell Allen, the other trustees thereof, and as such trustee Wallace was intrusted with $135,000 in United States bonds, belonging to said Institute; that Wallace was made treasurer of the Mary Murphy Mining Company, of which said Donaldson was the president, and when he absconded he was $5,700 short in his accounts as such treasurer; that

Wallace was also treasurer of the Southern Hotel Company; that after their father's death Wallace was Mrs. Allen's agent and managed her whole business in St. Louis; that he was Mrs. Donaldson's agent for her property in Davenport, Iowa, and received the rents therefrom; that he was the agent of all the heirs for holding and distributing a fund of $15,000, which they raised for the improvement of certain property in South St. Louis; that in the partition suit between the heirs, whereby about one million dollars worth of property in St. Louis was divided between them, Wallace was selected by them as the receiver and gave a bond for $25,000, upon which the plaintiff William R. Donaldson volunteered to become his surety; that William R. Donaldson as executor and trustee under the will of Bradford Allen, employed Wallace to make all his settlements and they are all in his handwriting; and that when Wallace absconded he was short in various amounts with various trusts of the family in an amount, approximately, $100,000. The defendants claim that they had a right to employ an agent to collect rents, and that upon this showing they exercised all the care that was required of them in selecting Wallace, and hence they are not liable for his defalcation.

It further appeared that while the defendants were acting as executors a piece of real estate was sold for one thousand dollars, and the same was not brought into their accounts. This sum with the interest thereon, aggregating $1,420, the plaintiffs claim judgment against the defendants for. The facts are conceded, but the defendants show that it was an innocent oversight, and the court so found. The court found that as the estate is indebted to the defendants, as above shown, in an amount exceeding twenty thousand dollars, it would be inequitable to charge the defendants with this $1,420, and the plaintiffs assign this ruling as error.

The trial court allowed the defendants $1,066.25 compensation for their services rendered since the final

settlement of the estate, being five per cent on the amount of disbursements made by them, and the plaintiffs assign this as error.

The trial court entered a decree terminating the trust, ordered a partition of the Missouri property; appointed a receiver to collect the rents and have the custody of the property pending the suit, and ordered the defendants to convey the property lying in other States to the several parties, one undivided one-seventh to each. The court refused to hold the defendants liable for the loss caused by the Wallace defalcation, or to enter judgment against them for the $1,420, and allowed them $1,066.25 commissions as aforesaid.

The defendants appealed from the decree terminating the trust, etc., and the plaintiffs appealed from the decree refusing to charge the defendants with the Wallace defalcation and with the $1,420, and allowing the defendants the $1,066.25 commissions.

I.

The principal question in this case is as to the right of the plaintiffs to have the trust terminated, and the property partitioned.

The plaintiffs contend that the trust attached to the office of executor and that upon the final settlement of the estate, the trust ceased. The court took this view. On the other hand the defendants contend that the trust is a personal one and involves a discretion, and that the purposes of the trust have not been accomplished, and hence the court erred in terminating the trust, appointing a receiver and decreeing partition.

The determination of this question involves the construction of that clause of the will which creates the trust.

It will be noted that the great bulk of the estate is directly disposed of either absolutely or for life, and that the clause to be construed is found in the residuum

clause of the will which disposes of all the real and personal property not otherwise specifically disposed of. It will also be noted that the personal property falling into the residuum is bequeathed to his children absolutely in equal parts. But as to the real estate the testator provided as follows: "And as to any real estate, wherever situate, other than that above disposed of, I give and bequeath the same to my executors hereinafter named, in trust, to be by them held, improved, leased, sold, or otherwise disposed of as to them may seem best for the use and benefit of my own children above named in equal shares, with the following exceptions," which was that as his homestead in Pittsfield, Massachusetts, had been in the family for over one hundred years, it should be sold to the child who would give the most for it.

This is the sole provision of the will relating to the trust. Now, it is in the lights as they appeared to the testator that we must gather his intention.

Briefly stated, the plaintiffs claim that under the decisions of this court in Littleton v. Addington, 59 Mo. 275, and Francisco v. Wingfield, 161 Mo. 542, the trust was an official and not a personal one, and ceased when the executorship ceased. While on the other hand, the defendants claim that under the decisions of this court in Hazel v. Hagan, 47 Mo. 277; Owen v. Switzer, 51 Mo. 328; State to use of Watts v. Boon, 44 Mo. 254, the trust was a personal one, involved the exercise of a discretion and continues until the purposes of the trust are accomplished. Both parties supplement their contention with reference to cases in other jurisdictions which they claim establish the correctness of their contention.

In Hazel v. Hagan, 47 Mo. 277, the testator, John W. Hughes, directed his wife to raise and educate his three children. The will then provided as follows: "Further, for the confidence I have and the obligation I leave resting on my beloved wife, I will and bequeath

to her all my estate, both real and personal, except such as is disposed of in the foregoing part of this instrument, during her lifetime. I will that my executors proceed according to law to sell my personal property, or so much thereof as my beloved wife may think best for her convenience. I will that any of my real estate may be sold at any time for the comfort and benefit of my beloved wife and my three children left with her, at private or public sale, as my executors may deem most expedient.'' The will then appointed the widow and Charles Hickox, the executrix and executor. Hickox died before the testator, and the widow alone qualified. She finally administered upon the estate and was discharged. Afterwards she sold some of the real estate, and the validity of her conveyance was the question in the case. The plaintiff contended that the will gave the widow a life estate, with a power as executrix to sell the land upon a certain contingency, but that as she did not avail herself of that power while she was executrix, her deed subsequently made was insufficient to convey the fee, while the defendant contended that the power to sell was a personal trust which survived the final settlement of the estate and was independent of the powers conferred by law upon an executor. This court held that the defendant's interpretation of the will was correct, saying: ''The will coupled a personal trust with a direct interest, accompanied with a power of disposition; and I have no doubt about the ability of the donee to impart a valid title and convey the fee. A discretion is given, and the property is to be sold at any time for the comfort and benefit of the beneficiaries, and at either private or public sale. The power of sale was a mere personal trust, not to be executed by Mrs. Hughes in virtue of her office as executrix, but at any time that she might deem it advisable to carry out the design and intent of the testator.''

In Owen v. Switzer, 51 Mo. 322, the testator devised to his wife, ''all my property, real and personal, moneys and effects, of whatsoever nature they may be, owned by

me or belonging to me, during her natural life to use, manage and dispose of as she may see proper, though the property never to go out of the family in any other way than to pay debts for the ordinary expenses of the family,'' etc. And the widow was appointed ''whole and sole executrix to this my last will and testament, to manage and control as she may think proper, my just debts first to be paid.'' The widow conveyed some of the property in fee, but whether during or after the close of the administration, does not appear, and the question in the case was whether the deed conveyed the fee or only the life estate of the widow and her interest in the land acquired by inheritance from her children who had died after her husband's death. The trial court held that the deed passed the fee. This court cited and approved Hazel v. Hagan, supra, but held that as the deed was an ordinary warranty deed and no reference was made to the power to sell conferred by the will of her husband, it must be held that she only intended to convey what she owned, and did not intend to exercise the power conferred on her by the will to convey the whole fee.

In Turner v. Timberlake, 53 Mo. 371, the testator appointed the wife his executrix of his will, and directed her to pay his debts, adding, ''and for that purpose I desire my wife to sell or have sold, either at public or private sale of lands, forty-five acres'' (describing them). He then devised to his wife and children ''the remainder of all my lands, negroes and other property, and all of my estate and effects whatever, that may remain after liquidation of my just debts, to be disposed of by my wife, Elvira. S. B. Turner, in any way she may think best, so that the property or its effects may be appropriated to her use and benefit during her natural life, and at her natural death the remainder of the property or its effects may be appropriated to the use and benefit of my two children.'' The controversy arose over a deed

made by the widow "under the provisions of the will." It was held that where an executor or trustee is given a power of sale, and is also personally interested in the property and makes a conveyance of the land, it will be presumed that only the personal interest was intended to be sold, unless special reference is made to the power conferred, showing an intention to exercise such power. And Owen v. Switzer and Hazel v. Hagan, supra, were cited approvingly.    As the deed in question purported to be made "under the provisions of the will," it was held that an exercise of the power was intended and that the fee passed.

In Bryant v. Christian, 58 Mo. 98, it was held that when the will devises a life estate to the widow with power to manage, dispose of and enjoy, and power to dispose of one-half of the property by her will, the widow took only a life estate in the whole with the usufruct and testamentary power to dispose of one-half of the property by will. Hazel v. Hagan was cited, but it was said: "It was held that a devise of an estate with the power of disposal would pass the fee. But the learned judge, in delivering the opinion, was careful to insert the qualification, 'there being no express estate for life limited to the devisee.'"

Hazel v. Hagan was cited in Railroad v. Green, 68 Mo. l. c. 177, but not upon the point here involved. It was likewise cited in Bean v. Kenmuir, 86 Mo. l. c. 670. So it was cited upon another point in Walton v. Drumtra, 152 Mo. l. c. 496.

On the other hand in Littleton v. Addington, 59 Mo. 275, the will provided: "I give and bequeath to my wife, Diana Branscom, the proceeds of the sale of all my property, both real and personal, requesting that she appropriate a sufficient sum out of said property or proceeds to educate my children, Rachel, Joseph E., Emma J., and Charles Arthur, to have the use of said proceeds during her natural life, or while she remains my widow; 3rd, it is my wish that my executors shall

sell, at private or public sale, all my property, both real and personal, as soon after my decease as they shall deem most expedient or for the best interest of my estate, and the proceeds thereof to be used or applied in such manner as my executors shall think best, or in such way as to preserve the whole amount of my property from waste.'' The wife and one Brown were appointed executrix and executor of the will. They finally administered on the estate and were discharged, and thereafter the widow conveyed the property to the defendant by a general warranty deed, and shortly afterwards she married him. Hazel v. Hagan was cited and approved, but the case at bar was distinguished from that case in this, that in the former case the power to sell was given to be exercised at any time, whereas in the case then before the court the power to sell was given to the executors, and the proceeds were to be used and applied by them, and it was said: ''This entirely rebuts any presumption of a personal trust to be executed after they or either of them had ceased to act officially.'' Judge WAGNER wrote the opinions in both cases, and it must, therefore, be assumed that he approved of the rules laid down in both cases.

In Francisco v. Wingfield, 161 Mo. 542, the testator appointed his wife and one Rhoads, executrix and executor of his will, wherein he gave his wife a life estate in certain personal and real property and then directed as follows: ''I will the remainder of my land being on the south side of the road above named, and the Faucett tract be sold by my executors, the money arising from the sale of said land to be loaned out, and that my wife be permitted to use the interest of the same in assisting her in the raising of and educating of my younger children. After the death of my wife I will that my executor is fully authorized and empowered to take charge of all my property both real and personal that is on hand, and to sell and dispose of the same either at public or private

sale, and divide the proceeds among my children."
The widow alone qualified and proceeded to administer
upon the estate. She advertised to make final settle-
ment, and exhibited her accounts showing a balance of
$375.80 in her hands. The probate court approved her
accounts, but ordered her to retain said balance and
that the administration of the estate be continued for
the purpose of selling the real estate and lending out
the money. Accordingly she continued so to do for
some thirteen years, when she married, and the court
revoked her letters and ordered the defendant, as public
administrator, to take charge of the estate *de bonis non*
with the will annexed. The widow had sold some of the
real estate and had said balance and certain investment
notes and some cash in her hands. The defendant re-
ceived all this from her and afterwards sold the balance
of the real estate, and continued to administer the estate
for about ten years, when his letters were revoked, and
the plaintiff appointed. The case was an action against
the defendant and the sureties on his bond as adminis-
trator, to recover the balance in his hands. The defend-
ants contended that all the proceedings after the final
settlement were void, and that his acts were in his ca-
pacity of trustee under the will and not as administra-
tor, and hence he could not be charged in his official
character. This court, per ROBINSON, J., held that, "the
power of sale conferred by the will in question is abso-
lute and unconditional except as to the time and mode
of performing the duty imposed. The testator, it will
be observed, directed a positive and peremptory sale of
this land and the distribution of the proceeds thereof
by his executors, untrammeled by any conditions or lim-
itations whatever. This power clearly comes within
the scope of the official duties imposed by law on execu-
tors, is executorial in its nature and follows the office."
Accordingly the defendant was held liable in his capac-
ity as administrator *de bonis non* with the will annexed.

The rules deducible from the cases in this court

may, therefore, be said to be as follows: First, if the will confers a power of sale coupled with a discretion to sell or not as the donee of the power sees fit, the trust is personal and is independent of the official character of the donee as executor, and may be exercised by the donee even if he does not qualify as executor, and survives the final administration of the estate, and continues until the purposes of the trust have been accomplished or until the donee of the power has had a reasonable time in which to execute the trust; such donee, being a fiduciary agent, is always subject to the control of a court of equity, which court has power at any time upon a proper showing to terminate the trust, discharge the trustee, and distribute the trust estate.

Second. Ordinarily, an executor or administrator has no power to sell the real estate except upon order of the probate court, to pay debts. But if the will expressly and absolutely directs the executor to sell the real estate, without vesting any discretion in the executor, and to apply the proceeds to the payment of debts or to distribute them, then the power adheres to the office of executor and is not personal, and must be exercised during the continuance of the executorship, for in such cases the proceeds of the sale of the real estate become personal assets of the estate and are a proper subject of administration and distribution by the probate court.

It will be of no profit to analyze the numerous cases from other jurisdictions cited by counsel. In many of them the particular phraseology of the will is resorted to to determine whether the trust is official or personal, as, if the grant of power is general to the executor without specially naming what executor, it is held to attach to the office and may be exercised by the executor named or by an administrator *de bonis non* with the will annexed, whereas if the grant of power is to the executor by name, or "hereinafter named," it is held to be personal, and can not be exercised by an administrator *de*

*bonis non c. t. a.*    Much of this learning is useless in this State, for our statute, sec. 137, Revised Statutes 1899, provides that an administrator *de bonis non cum testamento annexo,* shall have power to execute a power of sale conferred by a will, if the person appointed by the will fails to act and if the will appoints no one else to do so.

Without further elaboration, therefore, it follows that as the power granted by the will of Thomas Allen vested the donees of the power with a discretion, the power was personal and not official and it survived the final settlement of the estate by the executors.    But the power so conferred was not perpetual, and the donees are subject to the control of a court of equity.

The real estate that fell into the trust estate or that would fall into it, was some land in St. Louis and Illinois, which produced a revenue, and a half interest in about six thousand acres of unimproved land in Arkansas.

The purpose of the testator in so coupling the productive with the unproductive real estate was clearly to provide a means of supplying the necessary carrying charges for the unproductive property, until it had an opportunity to enhance in value.    The evidence shows that the trust property yields about $4,000 a year and that the carrying charges are about $2,000 a year.    The unproductive land was worth two dollars and a half an acre, or $15,000, when the testator died, and is worth about three dollars an acre, or $18,000, now.    The interest of the estate is one-half.    This portion of the trust property is, therefore, increased in value from $7,500 to $9,000, or $1,500 in about twenty years, and the carrying charges of the whole trust property has amounted to forty thousand dollars.    The evidence does not show what proportion of the carrying charges is properly chargeable to this unimproved property.    But it is fair to say that unimproved property that has increased in value only fifty cents an acre in twenty years is a very

unprofitable investment, and a court of equity would not hesitate to order the property sold and a new investment made, or where it did not appear that there was any reason to expect a speedy advance in value of the property, to declare the purpose of the trust accomplished or impossible of accomplishment and to order the trust terminated and the property turned over to the beneficiaries to be by them handled, as owners, as they deemed proper.

For this reason the decree of the trial court in terminating the trust was right. The decree of partition followed naturally and properly. There was no apparent necessity for the removal of the defendants as trustees and the appointment of a receiver, for the decree found that the testamentary trustees had properly administered the trust otherwise. But as this involved only a question of which trustee should earn the compensation allowed and as there has arisen quite a bitterness between the several beneficiaries, it can not be said that the trial court exercised such an unwise discretion in this regard as would constitute reversible error. Especially is this true when it is remembered that the whole matter was then in the hands of the court, and that the power of the defendants as trustees under the will had been ended and the trust declared terminated, and the property ordered to be partitioned. The *res* was then *in custodia legis,* and it was competent for the court to appoint its own agent to manage it and collect the rents issuing from it. This action involved no reflection upon the integrity or management of the trustees appointed by the will.

As the purposes of the trust had been accomplished, or found to be impossible, and as the trustees were personally in court, it was competent and proper for the court to require the trustees to convey to the beneficiaries the trust property which was without the territorial jurisdiction of the court, and which a decree of the court could not divest out of the trustees. This has been the

rule in similar cases ever since Lord Baltimore's case. [Penn v. Baltimore, 1 Ves. 444; see, also, 26 Am. and Eng. Ency. Law (2 Ed.), p. 133, and cas. cit.]

It follows that the judgment of the circuit court must be affirmed upon the defendants' appeal.

## II.

The plaintiffs appealed from the ruling of the circuit court refusing to charge the trustees with the Wallace defalcation of $3,758.33, and refusing to charge them with the $1,420, and allowing them $1,066.25 commissions as trustees on disbursements made by them since the final settlement of the estate.

Whatever may be the rule in other States, it is the law in this State that a trustee is only required to exercise such care in managing the trust property as an ordinarily prudent man would exercise in the management of his own property, and as such men usually employ agents to attend to ministerial duties, such as to collect their rents, so trustees have a right to employ such agents, and if they exercise ordinary care in the selection of such agents they are not liable for the defalcations of such agents. [Bates v. Hamilton, 144 Mo. 1; Anderson v. Roberts, 147 Mo. l. c. 493.]

The evidence clearly and conclusively shows that the selection by the trustees of Wallace as their agent to collect and deposit the rents was a proper selection. The testator and every member of the family selected him to perform like services for them, and in addition entrusted large sums of money to his keeping. He deceived them all. But it would be queer equity which would hold the trustees liable for trusting where all of the parties had done the same, and to a much greater degree, as is shown by the fact that his defalcation of the trust funds was only for $3,758.33, while his total defalcation from the whole funds of the family amounted to over one hundred thousand dollars. There was no error in the ruling of the circuit court in this regard.

The circuit court was likewise right in refusing to charge the trustees with the $1,420. The bill in this respect is a bill to surcharge and falsify the accounts of the executors. It appeared that the executors innocently omitted to charge themselves with $1,000, which with interest aggregated $1,420. It also appeared that upon final settlement the estate owed the executors over twenty thousand dollars, which has never been paid. If the $1,420 was deduced from the twenty thousand dollars, the estate would still be indebted to the executors in about nineteen thousand dollars. So that the estate suffered no loss by reason of the failure of the executors to bring this one thousand dollars into their accounts.

The allowance of the $1,066.25 commissions on disbursements since the final settlement was proper and followed as a necessary corollary to the finding that the trustees had faithfully administered the trust.

The judgment of the circuit court is therefore affirmed upon the plaintiffs' appeal.

All concur.