304

DAVID H. MORAN, Executor Under the Last Will and Testament of J. VINCENT REARDON, Deceased, and as One of the Trustees Under Said Will, Plaintiff-Respondent, v. ORVAL C. SUTTER, Curator of the Estate of MARY CATHERINE REARDON, a Minor, Defendant-Appellant, LEONA E. REARDON, Trustee Under Said Will; FRANCES R. JENNEMAN, Guardian of the Person of MARY CATHERINE REARDON, a Minor; MARGUERITE REARDON MORAN; GENEVIEVE REARDON PARDEW; JAMES A. REARDON and CATHERINE REARDON McLEAN, Defendants-Respondents, No. 41480—228 S. W. (2d) 682.

Division Two, March 13, 1950.

Rehearing Denied in Per Curiam Opinion Filed, April 10, 1950.

*David Y. Campbell, Elam & Campbell* and *David H. McGhee* for appellant.

306

*Fordyce, Mayne, Williams & Hartman, Frank E. Williams* and *Joseph Renard* for respondents.

ELLISON, P. J.—The defendant-appellant Orval C. Sutter, curator of the estate of Mary Catherine Reardon, a minor, appeals from a decree of the circuit court of St. Louis county construing the will of her father, J. Vincent Reardon, deceased, as creating an existing valid *testamentary trust* in her favor covering the corporate stock designated therein as represented by the substituted net proceeds from an intervening probate sale thereof, and accumulated net dividends therefrom. The decree further directs a severance of said trust corpus and income from the testator's estate, and a delivery thereof to the plaintiff-respondent David H. Moran and defendant Leona E. Reardon, as trustees of that trust. The defendant-appellant Sutter contends the trust is nonexistent or terminated and dry; that the attempted probate sale of the corpus was void; and that said minor owns the stock and net proceeds therefrom absolutely, or "in fee simple" as appellant's brief says. Whether that view is correct is the dominating issue on this appeal. The suit arises on Article III of the will, which provided:

"Article three. I give, bequeath and demise to my dearly beloved wife, Leona E. Reardon, all of my personal effects and property, whether real or mixed, *except my stock holdings in The Reardon Company*, a Missouri corporation, *which stock I direct be distributed as follows*:

"To my wife, Leona E. Reardon, 50/100%. *To my beloved daughter, Mary Catherine Reardon, 40/100%, which is to be held in trust* for her by my executors, *with power to sell or otherwise dispose of as they may see fit, but retain the proceeds or invest same for her sole benefit either before or after she becomes of age, as they may deem advisable or necessary.* [Italics ours].

"To my surviving brothers and sisters, to be divided equally among them, 10/100%."

An agreed statement of facts shows the testator was not a lawyer and wrote his own will in March, 1940, when his daughter, an only

child, was 7 years old. He died in February, 1947, owning 139,416-2/3 shares of the capital stock of the Reardon Company, of which he was president. The corporation had a total outstanding capitalization of 233,750 shares, and he therefore owned a controlling interest of 59.64% in the Company. The 50% of *his* interest bequeathed to his widow was 69,708-1/3 shares, and the 40% bequeathed in trust to his daughter was 55,766-2/3 shares. These two interests totaled 125,475 shares. Together they also constituted a controlling interest of 53-1/2% of the outstanding capitalization. The 10% bequeathed to the testator's brother and sisters was 13,941-2/3 shares. The Reardon estate received $83,560 in dividends in 1947 on testator's stock in The Reardon Company, but none thereafter. Aside from that stock the remainder of the estate consisted of other corporate stock, money and chattels, worth only about $15,000.

The petition in this suit was filed in the circuit court in April, 1947. Thereafter, in December, 1947, while this case was pending the plaintiff-respondent Moran, as executor of the will, filed a petition in the probate court of St. Louis county to sell 70,000 shares of the capital stock of The Reardon Company to pay the debts and expenses of administration of the testator's estate under Sec's 111, 112, R. S. 1939, Mo. R. S. A. The petition estimated these outlays would amount to about $400,000, including Federal estate and State inheritance taxes, income taxes, debts of the decedent, widow's allowances, executor's commission, attorney fees, etc. The value of the whole estate was estimated at $900,000.

The probate court held it would be improvident to sell only 70,000 shares of The Reardon Company stock because that would be less than 30% of the total capitalization and would not carry control of the corporation, whereas a substantial part of the value of the testator's stock lay in the fact that it was a controlling interest. And it was obvious that the required funds must come from a sale of the stock since the other estate assets were of comparatively insignificant value. The book value of the stock was figured at $3.24 per share, but the sale value of the whole stock was estimated at $6 per share.

The probate court ordered the sale of 90% of the testator's stock at a minimum price of $7.00 per share. This exactly covered the controlling 125,475 shares held by the mother and minor daughter, and omitted the 10% non-controlling stock bequeathed to the testator's brother and sisters. After considerable jockeying and competitive bidding with another company The Reardon Company bought the stock for $942,062.50, which was $1000 more than $7.50 per share, and the Probate Court approved the sale. Two of the minor stockholders appealed to the circuit court from that order, but both dismissed their appeals and the judgment and order became final. The trial court rejected this evidence, except the agreed fact that such a

sale was made, but preserved the evidence in the record under Sec. 114 of the Civil Code, Laws Mo. 1943, p. 387, Sec. 847.114, Mo. R. S. A.

The trial chancellor's decree held that the testator by Article III of his will intended to and did [quoting substantially]: create a trust whereby 40% of his stock in The Reardon Company, or the proceeds of sale thereof, would be held by his widow and plaintiff-respondent Moran as trustees for the sole benefit of his minor daughter, Mary Catherine; that he intended to and did confer upon the trustees full power to manage, control and administer said trust property, and to sell the same and reinvest the proceeds according to their sound discretion; that it was the testator's intention to clothe the trustees with power to use and apply so much of the net income of the trust as the trustees might deem advisable or necessary for the proper education, maintenance and support of his daughter during the continuance of the trust; that he intended to and did confer upon the trustees the power to terminate the trust, and to distribute the corpus and any accumulated income thereof to the daughter, free of the trust, at any time following her majority, when in their sound discretion to trustees deemed she had acquired sufficient experience and knowledge to hold, manage and control the same personally.

The chancellor's decretal order was that the net proceeds from the probate sale of the 90% of the testator's stock in The Reardon Company, after deducting its proportional share of the taxes, costs and expenses of administration, including the costs of this suit, be distributed to the widow and the trustees of the minor daughter in proportion to their respective interests therein, and that the remaining 10% of the stock be distributed in kind to the testator's brother and sisters, subject proportionately to the same expenses.

But with respect to the daughter's interest the order further provided that the two trustees should "hold, manage, control, invest and reinvest the same for the sole benefit of (the daughter) until she shall have reached her majority and until such time thereafter when in the sound discretion of said Trustees she shall have acquired sufficient experience and knowledge to personally hold, manage and control ▇▇▇▇ the same, at which time the Trustees shall distribute to her, free of the trust, the corpus of the trust property and any undistributed income thereof."

And there was a further provision, that during the continuance of the trust the trustees could devote such part of the net income therefrom as they deemed advisable to the proper education, maintenance and support of the daughter. Another paragraph dealt with the dividends on the stock of The Reardon Company, received by the executor during the period of administration. This, as we understand, refers to the $83,560 in dividends paid in 1947. It provided that these should be distributed to the widow, the trustees

of the daughter, and the brother and sisters in proportion to their several interests, *subject* to the payment of all costs and expenses of administration, or in the alternative should be *credited* directly on those costs and expenses proportionately as allocable to the several interests.

All of the fourteen subdivisional points in appellant's brief except the last, converge in one way or another on the contention that Article III of. the testator's will on a proper construction actually devised the 40% portion of his stock in The Reardon Company to his minor daughter absolutely and free of any trust; or that such resulted by operation of law; or that the trust has become passive and void for want of enforceable duties in the trustees. Repeating again the provisions of Article III of the will applicable to the daughter, to keep them before us. After stating his stock in The Reardon Company should be "distributed as follows," the testator bequeathed to his widow 50% thereof unconditionally, and then. continued: "To my beloved daughter, Mary Catherine Reardon, 40/100%, which is to be held in trust for her by my executors, with power to sell or otherwise dispose of as they may see fit, but retain the proceeds or invest same for her sole benefit either before or after she becomes of age, as they may deem advisable or necessary."

Appellant's first contention is that the words "for her sole benefit", as thus used in the will, appear without any limitation over [such as an estate in remainder], and therefore import an absolute title in the testator's daughter, citing Sec. 564, R. S. 1939, Mo. R. S. A., and Chapman v. Chapman, 336 Mo. 98, 105-11 (2-4), 77 SW. (2d) 87, 90-93(3, 4, 7). Our view is that the interposed trust provisions and conditions themselves were and are a limitation. The Chapman case does not help appellant. There, property was devised to a trustee [whose title as such was not questioned] "for the sole use and exclusive benefit and disposal" of F and L, and the trustee was authorized to sell and reinvest the proceeds with their written consent. Another clause provided that F must leave her interest to a named religious corporation and if she failed to do so her administrator or executor should. convey it. Held: L took an equitable fee, but F took only a life estate. The facts in that case affecting L were entirely different from those governing the rights of this. testator's daughter. She is not required or permitted to consent to anything. The corporate stock "distributed" to her was to be held *in trust* for .her by the trustees, and *they* had the title and power to sell or dispose of it as they saw fit, and to. invest the proceeds for her benefit until or after she became of age. Clearly the trust was active and cannot be violated without disregarding the express commands of the testator in his will.

The next three contentions. are that Article III of the will is ambiguous. The first of these is that the gift to the daughter, ex-

pressed by the provision in that Article directing 40% of the testator's stock to be "distributed" to her, passed an absolute fee and cannot be cut down by the later provisions of the Article unless the latter "are so clear in intent as to be susceptible of no other meaning"—and appellant says they are not. Six Missouri decisions are cited but all of them turn on their particular facts. The latest of these, St. L. Union Trust Co. v. Kelley, 355 Mo. 924, 934(5), 199 SW. (2d) 344, 350(8), and several of the others, merely say the subsequent clauses must be *equally* as strong and unequivocal as the first. And the Kelley case further says the rule invoked by appellant is simply an application of the general rule that the intention of the testator must be ascertained from the will as a whole. See also Clark v. Miss. Valley Trust Co., 357 Mo. 785, 792(2), 211 SW. (2d) 10, 15(6). We think the instant will clearly discloses that the stock was to be "distributed" to appellant's daughter *subject* to a trust. The provisions as to the *terms* of the trust may not be as clear as they might have been, but that there was a supervening trust cannot be doubted.

 The second contention is that the language declaring the trust is so vague and indefinite that the objects, purposes and terms thereof, and the functions of the trustees, cannot be ascertained, wherefore the trust is void for uncertainty. We shall not turn aside to review the decisions cited, based on their particular facts. But we hold the will here does declare a trust with some express and some implied duties to be performed by the trustees. They are broad, and evidently aimed at the protection of the trust fund during the minority of the daughter and until she attains a mature discretion in the opinion of the trustees. Webb v. Hayden, 166 Mo. 39, 47, 65 SW. 760, 762(2).

 The third contention is that the trust is void because it is unlimited in duration. It is true no definite time limit is fixed therein. But that does not make it void. A discretion in the trustees as to the time limit is provided. In Donaldson v. Allen, 182 Mo. 626, 641-2, 648-9(3), 81 SW. 1151, 1154, 1156(1) the trust declared as to designated land was as follows: "I give and bequeath the same to my executors hereinafter named, in trust, to be by them held, improved, leased, sold, or otherwise disposed of as to them may seem best for the use and benefit of my own children above-named in equal shares, * * *." As will be seen there was no express time limitation at all. But this court held: "as the power granted by the will of Thomas Allen vested the donees of the power with a discretion, the power was personal and not official and it survived the final settlement of the estate by the executors. But the power so conferred was not perpetual, and the donees are subject to the control of a court of equity." See also: 3 Page on Wills (Lifetime Ed.) § 1202, p.

542; 54 Am. Jur. § 70, p. 75; 65 C. J. § 124, pp. 349-352; Holmes v. Walter, 118 Wis. 409, 95 NW. 380, 62 L. R. A. 986.

Appellant's next contention is that the testator did not intend to create a trust extending beyond the distribution of the legacy at the close of the probate administration; and that the phrase "to be held in trust" was used in a "fiduciary lay" sense calling only for the exercise of executorial powers, and not of trust powers. We cannot see the basis on which appellant makes that contention. Article III of the will expressly provided the trust corpus was to be held by the executors *in trust* for the daughter, with power to sell or otherwise dispose of it, and retain or invert the proceeds for the daughter's sole benefit either before or after she becomes of age. The daughter was 7 years old when the will was made, and 14 years old when the testator died. Certainly the testator did not anticipate such a trust could be fully executed within the period of a year or two normally required for a probate administration. There is no merit in this contention.

The next contention is that since the daughter's 40% of her father's stock, along with her mother's 50% portion, was sold by the Probate Court during the period of probate administration, no active or enforceable duties were left to be performed by the trustees, and the trust became dry and passive. But it must be remembered the stock was ordered sold by the Probate Court to pay debts, taxes and costs of probate administration—not for any trust purpose. Likewise, the application for the sale was made by the plaintiff respondent Moran in his capacity as executor of the estate—not as trustee. And the debts, taxes and probate costs were charged pro rata against the shares of all the probate distributees according to their several interests. In other words, the probate sale merely *converted* the trust corpus held by the trustees from corporate stock into money for probate purposes. But the daughter's rights as cestui que trust attached to the money in lieu of the stock under the doctrine of equitable conversion, and the administration of the trust for her benefit could and did continue. 13 C. J., § 2, p. 852; Old v. Heibel, 352 Mo. 511, 514, 178 SW. (2d) 351, 354(3).

Appellant further contends that even though the chancellor was correct in decreeing that a trust existed, covering the money received from the probate sale of the stock, nevertheless the decree was erroneous in allocating to the trustees the power and duty of receiving, using and applying the income from the trust, including the dividends received during the probate administration—this for the reason that appellant as curator of the minor's estate was solely entitled under the statute to receive all net income.

As will be recalled, Article III of the will provided the executors as trustees should have power to retain the proceeds from the sale of the minor daughter's stock, or to invest the same for her sole

benefit either before or after she becomes of age as they deemed advisable or necessary. And if they could retain *or* invest the proceeds, undoubtedly they could do both—that is, retain *and* invest the money. The testator can hardly be thought to have meant the trustees should keep the money lying idle if they could make it earn income, except out of caution in particular instances. And likewise, the testator would not have provided the trustees could thus handle the funds for the daughter's sole benefit without contemplating they could also *use* them for her benefit, such as support, medical care, education and the like. No other provision was made in the will for these necessary expenditures during her minority, and she was only seven years old when the will was written.

On the other hand, Sec. 394, R. S. 1939, Mo. R. S. A. provides the curator of a minor "shall have the care and management of the estate of the minor, subject to the superintending control of the (probate) court." And appellant argues: that he, as such curator, was the one to whom the income from the trust should be paid; that such income payments accrued from the date of the testator's death; and (evidently) that he was the only one authorized to make disbursements therefrom for the daughter's support, subject to the approval of the probate court, thus displacing the daughter's own mother and the plaintiff-respondent, her father's business associate, both of whom were trustees.

We have been unable to find a decision in this State exactly in point on this asserted clash between the power and authority of a trustee for a minor and that of her curator. But we think appellant errs in his contentions. We must not lose sight of humane considerations, and the fact that the father, who wrote his own will, was not a lawyer. Appellant cites 2 Scott on Trusts, § 182(1), p. 969. But that authority does not support him. It says: "Where a beneficiary of a trust who is entitled to the benefit of the income is an infant or otherwise under a legal incapacity, it is ordinarily the duty of the trustee to pay the income to his guardian or to pay it into court. If, however, the trustee applies the income for the necessary support of the beneficiary, he is entitled to credit in his account, since otherwise the beneficiary would be unjustly enriched. Where by the terms of the trust the trustee is authorized to apply the income for the benefit of a beneficiary who is under an incapacity, the trustee can properly apply it for his benefit directly instead of paying it to his guardian. Where the trustee is directed to apply the income for the benefit of the beneficiary, the trustee cannot properly pay the income to his guardian, since this would be a delegation of his duties, and moreover would result in subjecting the estate unnecessarily to double commissions." See also idem, § 186, p. 982.

And it appears that In re Leeds' Estate, 23 N. Y. S. (2d) 679, 694(12), cited by appellant, also holds contrary to his contention.

That decision holds: "Concededly, where the will directs the trustees to pay the income to an infant, they are bound to pay it to the guardian; but if the will vests in the trustees discretion in the application of the income to the use of the infant, then they cannot escape their responsibility ▇ by turning it over to the guardian. * *"

▇ This disposes of the points made in appellant's brief except the last one, which complains of the trial court's action in excluding proof of the proceedings in the probate court showing how, and on what terms the 90% of the testator's stock in The Reardon Company was sold to pay debts, charges and expenses of administration of his estate. But they were in the record and we have set them out in this opinion. In our view these facts sustain the findings and conclusions of the chancellor. We find no error in the record. The decree below is affirmed, and the cause remanded for further proceedings in accordance therewith, particularly paragraphs 6 and 7 thereof. All concur.

▇ PER CURIAM. Defendant-appellant Sutter's motion for rehearing complains of our opinion "throughout", and particularly of our failure to mention four decisions cited in his brief. The first of these is Sevier v. Woodson, 205 Mo. 202, 208, 214(2, 3), 104 SW. 1, 2, 4 (3, 4), cited in the brief to the point that the testator's devise to his minor daughter Mary Catherine of 40% of the capital stock of The Reardon Company, together with the income therefrom, cannot be qualified or limited except by subsequent language in the will *"so clear in intent as to be susceptible of no other meaning."*

It is true we did not cite the Sevier case in the opinion, but we did refer to six later decisions in some of which it was noticed. And furthermore, the Sevier case did not use the language quoted above from appellant's brief. What it did say was: "that where a certain estate is granted in plain and unequivocal language in one clause of a will, the same cannot be . . . cut down by a subsequent clause of the will, unless the language used in such subsequent clause is *as* clear, plain and unequivocal *as* the language of the first grant." (Italics ours)

This latter statement is followed in a dozen or more later decisions of this court. We find only one recognizing the phrasing used in appellant's brief—Palmer v. French, 326 Mo. 710, 717(1), 32 SW. (2d) 591, 593(1). But that case likewise applied the "equality formula" declared in the Sevier case and the others mentioned above, and then added that "some of the cases" state the stronger rule now urged in appellant's brief, citing two *foreign* decisions.

But the fact is that the antecedent *position* of a clause in a will alone does not make it override subsequent clauses. The intention of the testator "must be ascertained from the will as a whole." Clark v. Miss. Valley Trust Co., 357 Mo. 785, 792(2), 211 SW. (2d) 10,

15(6). And it is furthermore true that the language of different unrelated wills is seldom if ever the same, and a slight difference in the wording, or in the context and background, may call for dissimilar construction of clauses which are superficially similar: Mercantile-Commerce Bank & Trust Co., Trustee v. Morse, 356 Mo. 179, 184, 201 SW. (2d) 317, 320(4).

In this case the stock involved was that of a family corporation. The testator bequeathed a controlling interest to his wife and daughter 7 years old, appointed his wife and nephew as executors, placed the daughter's part in trust and made the two executors trustees thereof. The bequests to the wife and daughter were declared in a single short paragraph of two sentences. The first sentence covered the unconditional bequest to the wife, and the single second sentence left the trust to the daughter. There were no separated clauses. The trustees were authorized to dispose of the daughter's stock as they saw fit, but were required to retain the proceeds of sale or invest them for her sole benefit either before or after she became of age, in their discretion. However, there was no express provision as to when the trust should end.

An investment for her benefit plainly would include investments yielding income which could be expended for the daughter's benefit before or after she became of age, or be paid to her after that event. The ▮▮▮ termination of the trust was left to the discretion of the trustees, and is also subject to the supervision of a court of equity. We think the trust was valid under Donaldson v. Allen, 182 Mo. 626, 636, 641-2, 648-9(3), 81 SW. 1151, 1152, 1154, 1156(1), discussed in the principal opinion and the other authorities cited in the same paragraph.

The second omitted decision of which appellant's motion for rehearing complains, is Peugnet v. Berthold, 183 Mo. 61, 63, 67(1), 81 SW. 874(1). In that case a testator bequeathed to his only child, a son, one-half of his estate outright. The remaining half he bequeathed to a trustee, the income to be paid to the son for life and the trust to terminate at the son's death. But a further clause provided the son should have power to dispose of the trust corpus in that remaining half at his death by will or otherwise, but made no provision for the disposition of that half if the son failed to execute the power, which he had not done when his father died and the will took effect. Held: the son took the absolute title to the entire estate.

We cannot see that this decision has the slightest bearing on the instant cause, for it cannot be said the will here placed any direct title or power in his minor daughter. Appellant's theory is that the will devised the corporate stock in trust for the benefit of the minor daughter, but made no effective disposition of the remainder interest subject to the daughter's life estate. But we think appellant is in error. This will does not indicate any intention to limit the

minor daughter to a life estate, or any other interest less than absolute ownership, except that the trustees are empowered to withhold and convert the stock into "proceeds" and invest the money for her benefit. Considering that she was of the tender age of 7 years when the will was written, it seems apparent, as the trial court held, that testator intended to and did contemplate the payment of trust income for the daughter's maintenance and education, and termination of the trust by the trustees when they thought she would be capable of holding and managing the property. And as held in the Donaldson case, supra, and the authorities cited therewith, a court of equity may terminate the trust on a proper showing. See also 54 Am. Jur., § 79, p. 81; § 84, p. 82; 65 C. J., § 128, p. 353, § 129, p. 355.

The third case cited by appellant and not discussed in our opinion is Walter v. Dickman, 274 Mo. 185, 188-9, 202 SW. 537. There, a testator bequeathed the net income from a trust fund to M. A. G., the wife of his grandson J. S. G. for life, then to J. S. G. for his life; and then without further limitation, in equal shares to his children and their heirs and assigns forever. The decision held the bequest did not violate the rule against perpetuities; and that the bequest to the children of J. S. G. and their heirs and assigns forever, was in effect a final bequest of the *corpus* of the fund to those children. Appellant contends this decision is in point on the theory that the gift of income in the instant case was without any limitation over and therefore passed the absolute title to the testator's minor daughter. But it is plainly apparent here that the bequest to her was under the limitations of the trust, and the discretion of the trustees or a court of equity.

The fourth decision omitted in our opinion, and urged again in appellant's motion for rehearing, is Fisher v. Fisher, 203 Mo. App. 45, 56(1), 217 SW. 845, 849(1). But in that case the trust was a *dry* trust of money payable in monthly installments under a life insurance policy to a trustee for the deceased insured's minor daughter. Held: the trust being dry and the trustee having no active duties to perform, the installments would be payable to the daughter direct if she were of age, but that since she was a minor the payments should be made to her guardian or curator. The difference between that case and this is obvious. The trustees have large discretionary duties in handling and paying out the trust fund derived from her father's will, in which also the trustees were nominated. Other authorities on the bearing of Sec. 394, R. S. 1939, Mo. R. S. A. in this case and the relative duties of testamentary trustees and curators are cited in the six paragraphs immediately preceding the last paragraph of the principal opinion.

We find no reversible error in the chancellor's decree on the points raised in the motion for rehearing, and the same is overruled.