JOSEPH S. KENDALL & another *vs.* CHARLES W. GLEASON & others.

Middlesex.    January 21, 22, 1890 — November 25, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Devise in Trust — Termination — "Legal Heirs" construed to mean Distributees.*

A testator devised his factory property in trust for his three sons, who were to occupy it rent free so long as they could agree and make it profitable; otherwise the property was to be sold, and one third of the invested proceeds paid to each son when he reached the age of fifty years, or, if he died earlier, "to his legal heirs." Moreover, upon the written request at any time of either son, the property was to be appraised and conveyed to any two of them wishing to take it at the appraised value; if no two so desired, it was to be sold, as the trustees should deem advantageous. Before either son was fifty years old, an appraisal was duly had and a sale made to two of the sons, and the trustees requested instructions as to the disposition of the proceeds. *Held*, that the trust was not terminated by the sale, but would continue as to the share of each son until he became fifty years old, or until his previous death; and that the share of any one so dying was to be paid to those entitled under the statute of distributions relating to personal estate.

BILL IN EQUITY, brought by the trustees under the will of Benjamin W. Gleason for instructions, as to the disposition of a fund. The case was reserved by *Devens*, J. for the consideration of the full court, and was as follows.

The will of Benjamin W. Gleason, who died on January 19, 1884, contained the following provisions which alone are material :

" Seventh. I give, devise, and bequeath to my trustees, Joseph S. Kendall and William A. Tower aforesaid, all my real estate, of which I may die seised and possessed, of every description, and wherever situated, including all my manufacturing property, machinery, and water power, to have and to hold the same to the said Joseph S. Kendall and William A. Tower, their heirs and assigns forever, but in trust nevertheless for the following purposes, that is to say : to sell and convey in fee simple my homestead estate to either of my three sons, Charles W. Gleason, Stillman A. Gleason, and Alfred D. Gleason, if either of them shall desire to purchase the same for a consideration satisfactory to my said trustees, and secondly to permit my three sons, Charles, Stillman, and Alfred, to occupy and improve the residue of said trust estate for the joint benefit of my said sons so long as they may desire to do so, my said sons to keep said real estate, manufacturing property, machinery, and water power in good repair and condition, and to keep the same insured to the satisfaction of my said trustees, and to contribute and pay one hundred and fifty dollars per annum for the maintenance of the public worship of Almighty God in the church now established in the village of Rock Bottom in said Stow, my said sons to be subject to no charge for rent so long as they comply with the conditions aforesaid, and I desire that religious worship should be maintained in Rock Bottom so long as the factory is occupied or held by any of my family. If at any time either of my said sons shall express in writing to my trustees a desire that the property so held in trust should be sold, then I direct my said trustees to cause the value of said property to be ascertained upon the appraisal of three discreet and judicious men, to be appointed by my said trustees, and to convey the same by deed in fee simple to either two of my said sons who may wish to purchase at the appraised value thereof, ascer-

tained as aforesaid, but if neither two of my said sons shall desire to become the purchasers of said estate under said appraisal, then I authorize and direct my said trustees, in their discretion, to sell and convey in fee simple said real estate, manufacturing property, machinery, and water power, at such time and in such manner, either at public auction or private sale, as shall in their opinion be most advantageous to said trust estate. It is my request that my said sons shall occupy and improve the factory property and real estate of which I may die seised and possessed (excepting the homestead) jointly so long as they agree, remain steady and respectable men, and can make the business profitable; when they cannot do so, then I direct my said trustees to sell and convey in fee simple the whole of my said factory property and real estate, and to safely invest the proceeds of such sale, and to pay over to each son, as they shall respectively arrive at the age of fifty years, one third of said trust fund, with its accumulations, so remaining in their hands. If either of my said sons shall die before arriving at the age of fifty years, I direct his share to be paid by my said trustees to his legal heirs. . . .

"Tenth. All the rest and residue of my estate of every name and nature I give, devise, and bequeath to my three sons, Charles W., Stillman A., and Alfred D., to be divided between them share and share alike."

Stillman A. Gleason requested the plaintiffs in writing to sell the factory property referred to in the will, and they, having caused the property to be appraised as required in the will, by a deed dated November 23, 1887, and duly recorded, conveyed the same in fee simple to Charles W. Gleason and Alfred D. Gleason, the remaining two sons, who had expressed their wish to purchase the same at such appraised value. The plaintiffs received and invested, and still hold, the proceeds of the sale, which amounted to over $97,000. Subsequently. on August 7, 1888, Stillman A. Gleason died intestate, not having arrived at the age of fifty years, leaving a widow who was duly appointed his administratrix, and as his only next of kin a minor son, for whom a guardian was duly appointed. Neither Charles W. Gleason nor Alfred D. Gleason had arrived at the age of fifty years at the time of the sale, or when the bill was filed.

The widow of Stillman A. Gleason contended that the trust was terminated on the sale of the property and the receipt of the proceeds by the plaintiffs, and that she was entitled, either as his administratrix to his entire share thereof, or individually to one third of such share as one of the distributees of his estate; also, that if the trust fund was to be treated as real estate, she still had an interest in it. Charles W. Gleason and Alfred D. Gleason contended that the sale and conveyance to them terminated the trust, and that they were entitled to their share of the proceeds thereof discharged from any trust. The guardian of the minor son of Stillman A. Gleason contended that his ward was entitled, as the only heir at law of Stillman A. Gleason, to the whole of the latter's share of the proceeds of such sale.

The case was argued at the bar in January, 1890, and afterwards was submitted on the briefs to all the judges.

*H. H. Sprague*, for the plaintiffs, read the papers in the case.

*C. R. Elder*, for the widow.

*W. Gaston & F. E. Snow*, for the guardian.

*J. T. Joslin*, for the surviving sons.

KNOWLTON, J. By the seventh clause of the will of Benjamin W. Gleason, the trustees, to whom all his real estate was devised, were to permit his three sons, Charles W., Stillman A., and Alfred D., to occupy and improve his manufacturing property, machinery, and water power, for their joint benefit, so long as they might desire, upon certain conditions therein stated, one of which was that they should be subject to no charge for rent. The last part of the clause is as follows: " It is my request that my said sons shall occupy and improve the factory property and real estate of which I may die seised and possessed (excepting the homestead) jointly so long as they agree, remain steady and respectable men, and can make the business profitable; when they cannot do so, then I direct my said trustees to sell and convey in fee simple the whole of my said factory property and real estate, and to safely invest the proceeds of such sale, and to pay over to each son, as they shall respectively arrive at the age of fifty years, one third of said trust fund with its accumulations so remaining in their hands. If either of my said sons shall die before arriving at the age of fifty years, I direct his share to be paid by my said trustees to his legal heirs."

It was evidently the desire of the testator that his three sons should jointly succeed him in carrying on the business of manufacturing, and he offered them an inducement to do so by providing that they might use the property without charge for rent so long as they should agree in occupying it together, and should make the business profitable. It is equally clear that, upon their failure to agree, or to carry on the business profitably, it became the duty of the trustees to sell the estate, and invest the proceeds, and pay one third to each when he should arrive at the age of fifty years, unless on account of his death his share had previously become payable to his heirs. In this same clause there is a preceding provision allowing either of the three sons of the testator to express in writing to the trustees a desire that the property should be sold, and requiring in such a case that it should be appraised by three discreet men, and sold by the trustees at the appraised value to either two of the sons who should wish to purchase it at that price, and if no two of them should wish to take it in that way, requiring the trustees to sell it either at public auction, or private sale, as they should think best.

Under this provision, at the request in writing of one of the *cestuis que trust*, the property was sold to the other two; and the principal question in the case is, whether the trust was thereby terminated, or the property merely changed in form, and made subject to investment by the trustees until the sons should respectively die or arrive at the age of fifty years.

There can be no doubt that the proceeds of the sale in the present case must be treated in the same way as if the property had been disposed of at public auction or private sale, after an appraisal under this provision and a failure of any two of the sons to take it at the appraised value. A sale of the kind last mentioned does not differ in character from a sale made under the last part of the clause without a request in writing. It is necessarily the result of a failure of the three sons to agree to carry on the business jointly in the manner contemplated. So long as they agree, there can be no request, and if they fail to agree, the last part of the clause is applicable. The special provision for a sale, which gives any two of the sons an opportunity to have the price fixed by a previous appraisal, is

within the general language of the last part of the clause, both in regard to the causes which produce the sale and in the fact that the trustees " sell and convey in fee simple," as required by that language.

Unless the proceeds are to be disposed of under this clause, the will makes no provision in regard to them, and they are left to fall into the residue. But it is to be presumed that the testator intended to express his purpose fully in reference to this part of his property. The language which we have quoted indicates his intention as to the proceeds of the property after a sale, and naturally covers the case at bar.

To hold that a sale, after a request in writing, would terminate the trust, would render futile the testator's provisions in regard to this part of his estate. He has said that, upon a failure of his three sons to agree in carrying on the business, the property shall be sold, and the proceeds held by the trustees until the beneficiaries respectively arrive at the age of fifty years. Upon the construction contended for by Charles W. Gleason and Alfred D. Gleason, either of the three sons, by a simple request in writing, might terminate the trust, and require that the trust property be turned into the residue of the estate, as soon as the trustees had entered upon the performance of their duties. It cannot be supposed that the testator intended to leave the existence of a trust for which he had made elaborate provisions to depend on the unanimity of his residuary legatees in desiring the continuance of it. In the opinion of a majority of the court, the trust continued after the sale of the real estate to Charles W. Gleason and Alfred D. Gleason, and as to their share of the proceeds it still continues.

On the death of Stillman A. Gleason the trust terminated as to his share, which then immediately became payable " to his legal heirs." The will contemplated a change of the real estate to personal property in the hands of the trustees, and that it should go to the heirs in the form of personal property. The words "legal heirs" must, therefore, be construed to mean those who would take personal property under the statute of distributions. *Sweet* v. *Dutton,* 109 Mass. 589. *White* v. *Stanfield,* 146 Mass. 424. One third of the fund held by the trustees should be paid to the heirs of Stillman A. Gleason, in the proportions

of one third to his widow, Mary E. Gleason, and two thirds to his minor son, Benjamin W. Gleason, whose share will be held by his guardian, Albert L. Jewell.   *Decree accordingly.*