D. A. Vines *v.* Elias Vines *et al.*

(*Knoxville.* September Term, 1920.)

1. PERPETUTIES. Conveyance to executor with directions not to sell for ten years but to pay rent to certain beneficiaries held active trust, and not void.

Where testator devised two tracts of land to his executor in trust with directions not to sell them for ten years, but to rent out, collect the rents, pay the taxes, insurance, and improvements, and then pay out of such rents such sums to two sisters as the trustee in his discretion considered necessary for their comfort and support, not to exceed $100 per month to each, the trust was an active one, and not contrary to the statute against perpetuities. (*Post, pp.* 525, 526.)

Case cited and approved. Jourolmon v. Massengill, 86 Tenn., 81.

2. WILLS. Intent of testator prevails in questions of construction.

It is a cardinal rule in the construction of wills that the intention of testator prevails, and the courts always give effect to that intention when ascertained. (*Post, pp.* 526-531.)

Case cited and approved: Henson v. Wright, 88 Tenn., 501.

Cases cited and distinguished: Gray v. Ward, 52 S. W., 1028; First Nat. Bank of Nashville v. Nashville Trust Co. et al. (Ch. App.), 62 S. W., 392.

3. WILLS. Conveyance to executor in trust held not to give beneficiary vested interest in estate.

Where testator devised two parcels of land to his executor in trust with directions that they were not to be sold for ten years, and that out of the rents executor was to pay to two sisters such an amount per month for their support as in his discretion he considered necessary, not to exceed $100 per month, the sisters took

no vested interest in the estate, but would become vested with such funds only as the trustee saw proper to pay them. (*Post*, *pp.* 531, 532.)

4. WILLS. Consent of beneficiaries held insufficient to terminate trust for their benefit.

Where testator devised certain parcels of land to his executor in trust with directions that they were not to be sold for ten years, but that from the rent the executor was to pay to two sisters such amounts as in his discretion he considered necessary for their comfort and support, that all the parties in interest, including such sisters, who were *sui juris*, agreed that the trust might be considered terminated, and that the property be sold and a lump sum payment made, *held* not to terminate the trust, the sisters having no vested interest in the estate, and it being beyond their power to destroy the manifest direction of the testator. (*Post*, *pp.* 532-534.)

Cases cited and approved: Young v. Snow, 167 Mass., 287; Kendall v. Gleason, 152 Mass., 457; Hoffman v. N. E. Trust Co., 187 Mass., 205; Kimball v. Blanchard, 101 Me., 383; Cuthbert v. Chauvet, 136 N. Y., 326; Lent v. Howard, 89 N. Y., 169; Douglas v. Cruger, 80 N. Y., 15; Danahy v. Noonan, 176 Mass., 467; Moore's Estate, 198 Pa., 611; Carney v. Kain, 40 W. Va., 758; Olsen v. Youngerman, 136 Iowa, 404; Robbins v. Smith, 72 Ohio St., 1; Rector v. Dalby, 98 Mo. App., 189; Harris v. Harris, 205 Pa., 460; Donaldson v. Allen, 182 Mo. 626.

Case cited and distinguished: Kimball v. Blanchard, 101 Me., 383.

5. TRUSTS. Trustee and beneficiaries in spendthrift trust cannot by agreement terminate it.

The trustee and beneficiaries in a spendthrift trust cannot by mutual agreement terminate the trust and defeat the purpose of the donor to give to the beneficiaries a support which shall be free from the claims of creditors. (*Post*, *pp.* 534-538.)

Cases cited and approved. Merchant's Nat. Bank v. Crist, 140 Iowa, 308;   Stewart's Estate, 253 Pa., 277; Meek v. Trotter, 133 Tenn., 145.

Vines v. Vines.

Case cited and distinguished: Nichols v. Eaton, 91 U. S., 716.

FROM WASHINGTON.

Appeal from the Chancery Court of Washington County.—Hon. E. K. Bachman, Special Chancellor.

S. W. Price, Cox & Taylor, and Harr & Harr, for D. A. Vines.

Divine & Guinn and Smith, Word & Anderson, for Elias Vines and others.

J. Stanley Barlow, guardian *ad litem*.

Mr. Justice McKinney delivered the opinion of the Court.

This suit involves, primarily, the construction of certain items of the will of F. B. Vines, who died in Washington county, Tenn., in December, 1917, the owner of a valuable estate, both real and personal.

The will was written about three years before his death.

He first made provision for his father, but his father predeceased him, and hence the bequest to his father lapsed and became a part of the general estate.

He made other bequests, about which there is no contention, and it is unnecessary to refer to these in detail.

The main objects of his bounty were his two married sisters, Mary Onks and Carrie Taylor, and his three brothers, N. J. Vines, Elias Vines, and L. J. Vines.

The testator was unmarried at the time of the execution of said will, but married about one year before his death, and a child was born as a result of said marriage just before his death.

There is no controversy as to the interest taken by his widow and child, and hence no further reference will be made to them.

Item 4 of his will is as follows:

"For the reason that my two sisters, to wit, Mary Onks, wife of Zed Onks, and Carry Taylor, wife of Guy Taylor, are in poor health, I give and bequeath to each of them, and the same is not to be charged to them or against the share which they are each hereinafter given, for the period of ten years, if they or either of them should live so long, a sum sufficient for their support, care, maintenance, and comfort, not exceeding one hundred dollars ($100) per month to each. My executor is to be the judge of what monthly allowance is proper and necessary for each; and he is directed to pay the same promptly and regularly."

In item 6 of the will, after detailing and describing the personal and real property owned by him, he says:

"My executor is hereby authorized, empowered, and directed to sell and convey all of the aforesaid real estate, selling always to best advantage and getting what it is worth, and execute and deliver to the purchaser or purchasers good and sufficient deeds with covenants of general warranty, binding upon my estate. And, for the purpose of such sale, my said executor is vested with title in fee

and absolute authority. But the said tract where father resides at the 'Y,' and the 'Lusk Tract' listed herein as items (10) and (11), respectively, shall not be sold within ten years after my death; but shall be held, managed and controlled during that period by my executor and the revenue derived therefrom, after keeping up said properties and making necessary improvements to prevent deterioration, paying taxes, insurance, etc., reasonable compensation to the executor for managing the same, shall be employed, so far as necessary, to the payment of bequests to my sisters in paragraph IV hereof. The proceeds of the sale of all of said property, when sold, shall be distributed as hereinafter directed."

Item 7 of the will, so far as need be quoted provides:

"After deducting the sums or amounts necessary to meet and satisfy the bequests made in paragraphs I, II, III, and IV, hereof, and the compensation allowed the executor together with proper and necessary expense, I direct that the balance and residue of my estate, thus reduced to cash, be divided into five equal parts and distributed as follows."

The testator then proceeds to give to his brother N. J. Vines one part; to his brother Elias Vines another part; to his brother L. J. Vines for his natural life, and to his heirs in remainder, another part; and to each of his two sisters a part during their natural lives, and to their children in remainder.

He then provides:

"And these shares divested and bequeathed to my said sisters are separate from and independent of the provision made for them in paragraph IV of this will; and that provision is not to be taken into consideration in allowing this, nor this in paying that."

Item 9 of the will is as follows: "The rest and residue of my property, of whatsoever kind and character, is to be distributed under and in accordance with paragraph VII of this will."

Item 10 appoints the complainant, David A. Vines, as his executor.

After the death of the testator the brothers and sisters, being of the opinion that a postponement of the sale of the "Y" tract and the "Lusk" tract for ten years would result in great loss to them all, undertook to obviate this by entering into an agreement among themselves as a result of which the executor would be empowered to sell said two tracts of land with the other lands. Said agreement provides:

"Mary Onks and her husband, Zed Onks, and Carrie Taylor and her husband, Guy Taylor, each respectively for herself and himself, release, surrender, and relinquish the provision in the will of the said F. B. Vines, deceased, wherein said two sisters are to be paid for a period of ten years monthly payments by the said executor of said F. B. Vines, deceased, with all of its intents, and discharge said two pieces of property, and all property, funds, and estate from being held for such period, to provide funds to make such payments, and discharge the said executor

from holding the same, or managing the same, for said period or said purpose, and with the purpose for which such sale is deferred removed, direct that same be forthwith proceeded with, as to all property and estate, the other beneficiaries, the said Elias Vines and N. J. Vines and L. J. Vines, ratifying and accepting such action to all intents and purposes."

This last instrument further provided for the payment out of the estate of $3,000 to each sister, in satisfaction of her interest under item 4 of the will.

The executor, being of the opinion that this agreement was invalid and did not protect him, declined to recognize same, and thereupon said parties, on July 30, 1918, entered into another agreement as follows:

"Now, therefore, in consideration of the foregoing, the said parties, for the purpose of eliminating absolutely any and all questions, and the basis for any and all such, have and do hereby, by this supplemental paper and contract, obviate all that feature and part of said paper of June 8, 1918, aforesaid (the agreement just above referred to) which requires, asks, or requests the said D. A. Vines (the executor) to pay said sum of $6,000, $3,000 each to the said Mrs. Mary Onks and Mrs. Carrie Taylor, out of the funds of the said estate of F. B. Vines, deceased, now or to come into the hands of said executor, or leaves the matter in the alternative for the period of sixty days from and after said June 8, 1918, or any other period, and said parties as they have the right to do, as they are not prohibited from doing, and in the exercise of their

unabridged rights of contract, alienation, and disposition of property, have finally settled and liquidated said provision and all accruing thereunder in favor of said Carrie Taylor and Mary Onks in said will aforesaid, which they in full accept, ratify, confirm, and relinquish, release, and discharge to said estate as a fund for general distribution to said five equally under said will, free from said provision for monthly payments to said two sisters."

The executor, being unwilling to act upon the agreement of the parties, filed the bill in this cause to have the will construed, and, among other things, to be directed whether he had the right under the will, and ought to make sale of the two pieces of property which the will provided should not be sold for ten years.

In their answer to the bill the defendants specifically aver that the bequest in favor of the two sisters had been renounced, liquidated, and settled by the agreement above referred to. They further allege that it would require the expenditure of large sums of money to make said property rentable, that in its present condition it will yield very little income, and that it would be to the best interests of all concerned that the property be sold immediately. They seek and ask that the sale of said property be accelerated and the entire estate converted into cash and distributed under the residuary clause of the will.

Before the hearing of the cause by the chancellor proof was taken as to the advisability and advantage to the estate generally of selling the property at this time rather than ten years later. All of the witnesses, including the

Vines v. Vines.

executor himself, concurred in the judgment that it would be better to sell the property at the present time.

Both the chancellor and the court of civil appeals concluded that, if these two pieces of property were sold, and the funds loaned out or invested in first-class securities, the net income would be larger than the property would yield in its present condition.

Upon this state of facts the chancellor held that the two sisters took no vested interest under item 4 of the will, and could not renounce or surrender the provision made for them in item 4 of the will, and thus terminate the trust and accelerate the estate so as to give the executor the right and power to sell said two pieces of property along with the other property.

The court of civil appeals took a contrary view, and reversed the chancellor, and ordered the property sold and the proceeds distributed.

In order to arrive at the intention of the testator, it is necessary to read items 4 and 6 of the will in conjunction, from which it is apparent that the testator's intention was to convey the "Y" tract and the "Lusk" tract to his executor in trust with directions to rent out same, collect the rents, pay the taxes, insurance, and improvements, and then pay out of such rents such sum to his said two sisters as the trustee, in his discretion, considered necessary for their comfort and support, not to exceed $100 per month to each.

It is not contended and could not be, under our authorities, beginning with *Jourolmon* v. *Massengill*, 86

Tenn., 81, 5 S. W., 719, that the trust in question is not an active one. Neither could it be contended that it was contrary to the statute against perpetuities, or that it was invalid for any reason.

It is a cardinal rule in the construction of wills in Tennessee that the intention of the testator prevails, and the courts always give effect to that intention when ascertained. The primary object which the testator had in view was to provide as far as possible for his invalid sisters, who were advanced in years, and to see that under no circumstances were they deprived of a support. He, of course, could have provided that a lump sum be paid his sisters as a support, or that all of his real property be converted, and a sufficient amount of the proceeds invested so as to yield them a support, or he could have directed that his executor pay the net income from the "Y" tract and the "Lusk" tract each year for their support and maintenance, in which event they could have anticipated such income, or could have alienated the same, but the testator did not see proper to do either of these things. Realizing, perhaps, that such bequests are often dissipated, or are poorly invested, or that the beneficiary anticipates such income, or alienates same, thereby losing the comfort and support which the donor purposed to provide, the testator in the instant case, to obviate all of this, and to insure such support under any contingency, left the property to the trustee with a discretion to pay to the said sisters monthly such sum as he thought proper and necessary.

In Perry on Trusts, par. 368a, Mr. Perry lays down the rule that, where an absolute equitable interest is in the *cestui que trust,* it goes to his assignees or creditors in case of insolvency, and that, if an equitable interest is given to a *cestui que trust,* no restraints upon alienation can be imposed, but the author then says:

"But a trust may be so created that no interest vests in the *cestui que trust*; consequently such interest cannot be alienated, as, where property is given to trustees to be applied in their discretion to the use of a third person, no interest goes to the third person until the trustees have exercised this discretion. So if property is given to trustees to be applied by them to the support of the *cestui que trust* and his family, or to be paid over to the *cestui que trust* for the support of himself and the education and maintenance of his children. In short, if a trust is created for a specific purpose, and is so limited that it is not repugnant to the rule against perpetuities and is in other respects legal, neither the trustees, nor the *cestui que trust,* nor his creditors or assignees, can divest the property from the appointed purposes. Any conveyance, whether by operation of law or by the act of any of the parties, which disappoints the purposes of the settler by divesting the property or the income from the purposes named, would be a breach of the trust. Therefore it may be said that the power to create a trust for a specific purpose does, in some sort, impair the power to alienate property."

A number of authorities are cited by Mr. Perry in support of the foregoing text, which has been approved by this

court in the cases of *Jourolmon* v. *Massengill, supra,* and *Henson* v. *Wright,* 88 Tenn., 501, 12 S. W., 1035.

Mr. Perry, in the next paragraph, uses this language:

"But when the trustees have an arbitrary power of applying such part of an income as they see fit in support of a *cestui que trust,* and for no other purpose, it was held that nothing passed to his assignees."

In 40 Cyc. 1778, the author says: "The *cestui que trustent's* interest may be left in the discretion of the trustee, but where the amount is in the discretion of the trustee, the *cestui que trust* has no estate."

In *Gray* v. *Ward* (Ch. App.), 52 S. W., 1028, the provision of the will in question was as follows:

"My will and desire is that my grandson Henry Lewis Ward have and is given in trust to my grandnephew, John G. Lowe, the following tract or parcel of land: (Describing it)—containing by estimation about sixty-five acres, be the same more or less. My will is that, in case Henry L. Ward should die without having a living lawful child, that Laura J. Gray and her children, whether born or unborn, have the land above described, in the same way that the other has been given her. My will is that my daughter, Laura J. Gray, have the control and renting and receiving rents of the land given to my grandson, Henry L. Ward, and dispose of for the benefit of him, in the manner she may think best, for the benefit and comfort of himself."

The court, after reviewing all the Tenessee decisions dealing with such question, concludes as follows:

"It thus appears that an implied limitation upon the power of alienation arises where the trust is limited to the support and maintenance of the beneficiary, or where the income is to be paid over only in the discretion of the trustee, or when it can only be applied for a special use, such as education or support. Let us apply these rules to the will under consideration in the present case. It appears that the trustee, Laura J. Gray, was not only to control and rent out the land and collect the rents, but she was to dispose of the rents in such manner as she might think best (that is, in her discretion), 'for the benefit and comfort' of the *cestui que trust,* Henry L. Ward. Here we have a case where the title was withheld, being vested in one trustee, John G. Lowe, and where the control and use was withheld, being vested in another trustee, and the avails of such control and use were to be applied, in the discretion of the trustee, for the 'benefit and comfort' of the beneficiary. At the death of the beneficiary, of course, the trust would cease; and, if he left a living lawful child, the whole estate would go to that child, and, if no such child, then to Laura J. Gray and her children. Obviously Henry L. Ward had no substantial interest in this property, except the right to have the rents and profits applied by the trustee, Laura J. Gray, for his support during his life, the application to be made in the discretion of the trustee. The idea of support is implied in the words 'benefit and comfort.' No other reasonable interpretation could be given them. In this view, we must

143 Tenn.—34

hold the conveyance made by cross-complainant Ward void. Such a conveyance would destroy the trust, and hence is within the implied limitation upon the powers of alienation above referred to."

In *First National Bank of Nashville* v. *Nashville Trust Co. et al.* (Ch. App.), 62 S. W., 392, the court had under consideration the will of John Thompson, Sr., by which he conveyed certain lands to his wife, Mary Thompson, as trustee, during the natural life of his son, John Thompson, etc. The will then recited:

"My wife, as trustee, is authorized annually, or oftener if she chooses, to pay over to said John Thompson the rents, issues, and profits of said real estate from the time of his majority, for and during his natural life, his receipt being a good voucher or his occupation of the property a good discharge for her; but, in case my son John Thompson should become at any time heavily involved in debt, my wife, as trustee, is authorized to withhold the payment of said issues, rents and profits, and to resume possession of any real estate placed under his control, until my said son becomes free from pecuniary embarrassment as aforesaid; and if, during the remainder of his life, he does not become free from embarrassment, the fund is to accumulate, and on his death to be disposed of as if it were real estate, subject to every limitation which rests upon and affects the said real estate devised as aforesaid."

It was held by the court that John Thompson took no interest in the property, and that he could not convey the same, and that same could not be reached by his creditors.

It will be observed that the "Y" tract and the "Lusk" tract, composing the trust estate, were conveyed absolutely to the trustee, and the will did not even state that it was conveyed to the trustee for the use and benefit of the two sisters, so that they took neither a legal or an equitable interest in said two tracts of land.

The will provided that the trustee might turn over a portion of the income from said two tracts of land to the sisters, for their support, if it became necessary, and provided that the trustee was to be the judge as to such necessity.

Such necessity may not arise within the ten-year period, in which event the sisters would receive nothing under said provision of the will. In any event, they take no vested interest in the estate, but will become vested with such funds only as the trustee, in his discretion, sees proper to pay to them.

But it is insisted that the beneficiaries have renounced the provision made for them in item 4 of the will, and that, as a result, the trust has terminated and the estate accelerated.

Referring again to Perry on Trusts, page 1496 of volume 2, the author says:

"There are two modes in which a trust may be terminated: (1) It may terminate upon the accomplishment of the purposes for which it was created. When the time expires during which a trust is to exist, or when the event happens upon which a trust is to cease, and the trustees

have performed all their duties and distributed the fund as directed, the trust is at an end. . . . (2) Although a trust may not have ceased by expiration of time, and although all its purposes may not have been accomplished, yet, if all the parties who are or may be interested in the trust property are in existence and *sui juris,* and if they all consent and agree thereto, courts of equity may decree the determination of a trust and the distribution of the trust fund among those entitled. A trust will not be continued merely that the trustee may continue to receive compensation from it. If the *cestui* desire its termination, it will not be maintained for the benefit of the trustee. When the purposes named in the trust which are inconsistent with the full beneficial ownership and control of the *cestui* are fulfilled, so that the trustee holds the property on a simple trust, the *cestui* having the absolute equitable ownership of the fund, he is entitled to have the trust terminated."

It is not contended, of course, that the trust has terminated by the expiration of the time limit, but it is insisted that this trust has terminated for the reason that all the parties in interest are *sui juris,* and have agreed that the trust be terminated. As previously shown, these sisters have no vested interest in said estate, and the doctrine as announced by Mr. Perry only applies where the *cestui que trustent* has an equitable interest in the property bequeathed.

In note "a" to the above text, on page 1498 of volume 2, the author says:

"But, if it appears that the creator of the trust had in view a valid purpose which may be defeated by a termination of the trust before the time set by him, the courts will not decree a termination so long as the purpose is capable of being accomplished. And the courts are inclined to respect the express provisions as to duration of the trust, unless it is clearly shown that the purpose of them has been fully accomplished or rendered impossible of accomplishment. *Young* v. *Snow,* 167 Mass., 287 (45 N. E., 686) ; *Kendall* v. *Gleason,* 152 Mass., 457 (25 N. E., 838, 9 L. R. A., 509) ; *Hoffman* v. *N. E. Trust Co.,* 187 Mass., 205 (72 N. E., 952) ; *Kimball* v. *Blanchard,* 101 Me., 383 (64 Atl., 645). While the courts will not decree a termination of the trust when some of the beneficiaries are not *sui juris,* the fact that all of them are *sui juris* and wish the trust terminated is not enough. Id.

"If the continuance of the trust suspends the *cestuis'* power of alienating their interests in either the income or the principal, this is usually a good reason for its continuance. *Cuthbert* v. *Chauvet,* 136 N. Y., 326 (32 N. E., 1088, 18 L. R. A., 745) ; *Lent* v. *Howard,* 89 N. Y., 169; *Douglas* v. *Cruger,* 80 N. Y., 15; *Danahy* v. *Noonan,* 176 Mass., 467 (57 N. E. 679); *Moore's Estate,* 198 Pa., 611 (48 Atl., 884). The same is true if it appears that a substantial part of the trust scheme was to withhold from the beneficiaries the management of the property (*Carney* v. *Kain,* 40 W. Va., 758 [23 S. E., 650] ; *Olsen* v. *Youngerman,* 136 Iowa, 404 [113 N. W., 938] ; *Robbins* v. *Smith,* 72 Ohio St. 1 [73 N. E. 1051]; but see *Rector* v. *Dalby,*

98 Mo. App., 189 [71 S. W., 1078], or the power of converting it into other forms of property (see *Harris* v. *Harris*, 205 Pa., 460 [55 Atl., 30]; *Donaldson* v. *Allen*, 182 Mo., 626 [81 S. W., 1151]).

"In *Kimball* v. *Blanchard*, 101 Me., 383 (64 Atl., 645), it is said: 'While courts will sometimes decree the termination of a passive trust, before the expiration of the time named, or one in which the purposes of the trust have been accomplished, or where no good reason is shown why the trust should continue, and where all the persons interested in it are *sui juris* and desire that the trust be terminated, . . . we are not aware of any case where such a termination has been decreed where these conditions do not exist.'"

As stated above, the sisters take an interest only in such sums as the trustee, in his discretion, may from month to month pay to them. If the trustee should make a tender and they should decline to receive it, that would not destroy the trust, because the mere fact that they declined to accept it one month would not necessarily mean that they would not accept it the next month. They might change their minds. In any event, it is there for them. As stated in the text quoted above, even though they be *cestui que trusts*, in a sense, it is beyond their power to destroy this manifest direction of the testator.

The trustee and beneficiaries in a spendthrift trust cannot by mutual agreement terminate the trust and defeat the purpose of the donor to give to the beneficiary a support which shall be free from the claims of creditors.

*Merchants' National Bank* v. *Crist,* 140 Iowa, 308, 118 N. W., 394, 23 L. R. A. (N. S.), 526, 132 Am. St. Rep., 267; *Stewart's Estate,* 253 Pa., 277, 98 Atl., 569, Ann. Cas., 1918E, 1216.

To permit these sisters to terminate this trust by renouncing its benefits, and settle with the remaindermen on the side, would be permitting them to do indirectly what they could not do directly; it would amount to a substitution of their judgment for that of the testator, and would produce a result contrary to that expressed by the donor.

Such trusts, as stated in 30 Cyc., 40, are sustained "not out of any consideration for the beneficiary, but out of consideration for the right of the donor to control his bounty and dispose of his property in any manner he sees fit, provided it is not repugnant to law."

We approve of the following statement made by Mr. Justice Miller in the leading case of *Nichols* v. *Eaton,* 91 U. S., 716, 23 L. Ed., 254, as follows:

"Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitude of fortune, and even his own improvidence or incapacity for self protection, should not be permitted to do so, is not

readily perceived.    These views are well supported by adjudged cases in the State courts of the highest character."

To hold otherwise would apparently destroy the power of a testator to make provision for those whom he considers improvident and unable to manage an estate for themselves, and to whom he feels obligated to provide a support.

A parent often wishes his child to have a guaranteed support out of his estate, and realizing that a bequest of a lump sum may soon be lost or dissipated, creates a trust, the income from the trust fund to be used in the support of the child.    Now, if the child should renounce the trust, then, according to the contention of the defendants, the trust would be terminated and the support lost to the child.

The trust in question is in the nature of a spendthrift trust.    If a beneficiary of such a trust can terminate it by declining to accept its provisions, then it is impossible for a parent to provide for an improvident child unless the child sees proper to acquiesce in the plans of the parent.

The testator devised the two tracts of land in question to a trustee, and directed the trustee to rent out the property and out of the rent pay for necessary improvements, taxes, insurance, costs, and trustee fees, and if, in his judgment, he deemed it necessary, pay his sisters such sums, not exceeding $100 per month each, for their support, and, at the expiration of the ten year period, sell the lands and distribute the funds.    The trust is an active one covering a period of ten years, and, under the au-

thorities herein above cited, we are of the opinion that the trust is not terminated by the fact that two probable beneficiaries announce that they will not take under it. It does not appear that the trustee has ever tendered them any sum, and their declination to receive a support from their brother's estate is premature.

The defendants rely upon the case of *Meek* v. *Trotter*, 133 Tenn., 145, 180 S. W., 176, in support of their contention that upon the dissent of the widow the estate accelerates and the trust terminates, but this case is not at all in point.

There is quite a distinction between this case and those relied upon by the defendants to the effect that, where a trust is created in favor of a widow for life, and she renounces the benefits thereof, the trust is terminated just as though she had died and the bequest accelerates. In these latter cases the widow exercised her right to dissent; in other words, she had an option to take either under the will or under the statute. In some of these cases the husband provides in express words that she can elect between the trust and the provisions made for her by statute. When such language is not found in the will, the right to elect is implied, for every husband is presumed to know that his widow will have the right to choose between the provisions of the will and those provided by statute. When the widow elects to take under the statute, that necessarily destroys the trust feature. She cannot accept both. She has the right to choose between them, and, having once elected to take under the statute, she can never take under the will.

In the present case the doctrine of election does not, and necessarily cannot, apply, because there are no alternatives; the acceptance of one terminating the other.

In the case of the dissenting wife there is nothing in the hands of the trustee for her, and there never can be, for the trust has been destroyed by her option to take under the statute.

It is further suggested that the court should decree a sale of the land on the theory that an emergency has arisen justifying such action.

The chancellor and the court of civil appeals held otherwise.

Upon an examination of the pleadings, we find no such issue tendered, and a decree of sale in the absence of proper pleadings would be *coram non judice.* In the state of the record we are of the opinion that such sale should not be ordered.

It results that the decree of the court of civil appeals will be reversed, and that of the chancellor affirmed, and the cause will be remanded to the chancery court for further proceedings.

The executor will pay the costs accrued in the various courts out of the funds of the estate.